**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **BELFOR USA GROUP, INC.,**   Plaintiff,   v.   **ESJ RESORT LLC; and MAPFRE,**   Defendants. | CIV. NO. 18-1048 (PG) |
| **ESJ RESORT LLC,**   Counterclaimant,   v.   **BELFOR USA GROUP, INC.,**   Counterdefendant. | |

## OPINION AND ORDER

Before the court is codefendant MAPFRE's motion to dismiss, and plaintiff BELFOR USA Group's ("BELFOR" or "plaintiff") opposition thereto. See Docket Nos. 46 and 51. For the reasons specified below, defendant's motion is **DENIED.**

## I. BACKGROUND

On January 30, 2018, BELFOR filed suit against ESJ Resort LLC ("ESJ").[1] See Docket No. 1. On April 15, BELFOR amended its complaint to include two claims against the hotel's insurer, MAPFRE.[2] See Docket No. 18 (counts five and six). Specifically, BELFOR brought one claim for breach of contract and another under Puerto Rico's general tort statute. See id. at 9-10.

The amended complaint alleges that BELFOR and ESJ entered into a Disaster Recovery and Emergency Services Agreement ("the contract") on September 22, 2017, pursuant to which

---

[1] BELFOR, a corporation based in Colorado, provides disaster recovery and property restoration services. ESJ is a Delaware limited liability company that owns El Hotel San Juan ("the hotel"). See Docket No. 18 at 1.
[2] MAPFRE is a Spanish corporation. See Docket No. 18 at 2.

BELFOR provided emergency mitigation and restoration services to the hotel following damages caused by Hurricane Maria. See id. at 3; Exhibit No. 1. BELFOR maintains that it complied with the terms of the contract, but ESJ has yet to pay for the work completed. See Docket No. 18 at 3.

The amended complaint further avers that "on or about March 19, 2018," BELFOR and MAPFRE entered into a settlement agreement ("the agreement") pursuant to which MAPFRE would pay BELFOR $10,100,000.00 in complete satisfaction of all billed and unbilled services rendered. See id. However, BELFOR asserts that MAPFRE has refused to satisfy the agreement. See id. BELFOR appended a series of e-mails to the amended complaint. See Docket No. 18, Exhibits No. 2 and 3. It contends the e-mails memorialize the terms of the agreement and MAPFRE's confirmation thereof. See Docket No. 18 at 4. The content of those e-mails will be discussed in detail infra.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir. 2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir. 2014)) (internal quotations marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Esevier Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

"To cross the plausibility threshold, the plaintiff must 'plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ... ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### III. DISCUSSION

MAPFRE moves to dismiss BELFOR's amended complaint against it, on the grounds that its settlement offer expired when BELFOR responded to it with a counteroffer. See Docket No. 46. However, MAPFRE's position fails at this stage. The amended complaint's allegations plausibly plead the existence of a valid contract. Furthermore, the appended exhibits do not support an inference to the contrary.

**A. Breach of Contract (Count Five)**

Pursuant to local law,[3] a breach of contract claim requires a valid contract, a breach of that contract by one of the parties, and damages consequent to that breach. See Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012); R & T Roofing Contractor, Corp. v. Fusco Corp., 265 F. Supp. 3d 145, 154 (D.P.R. 2017). A valid contract, in turn, requires consent, object and cause. See P.R. LAWS ANN. tit. 31, § 3391; Soto v. State Indus. Prod., Inc., 642 F.3d 67, 73 (1st Cir. 2011). MAPFRE argues, in a nutshell, that the agreement is not valid. See Docket No. 46. It points to the amended complaint's appended e-mails in an attempt to show that the parties never consented to the agreement. See id. at 5; Docket No. 18, Exhibit 2.

---

[3] Because this is a diversity jurisdiction case, Puerto Rico substantive law applies. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (quoting Hanna v. Plumer, 380 U.S. 460, 465 (1965)).

CIV. NO. 18-1048 (PG) Page 4

*i. Pleading Consent*

As a threshold matter, the court finds that BELFOR sufficiently pleads the existence of a valid contract in the amended complaint. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level..."). See also Iqbal, 556 U.S. at 678. Indeed, it posits that "*BELFOR and MAPFRE entered into [the agreement] ... whereby MAPFRE agreed to pay BELFOR* [$10,100,000.00] in total and complete satisfaction of all outstanding invoices and of any unbilled work..." Docket No. 18 at 3 (emphasis added). Even a cursory reading of that allegation is enough to determine that BELFOR pleads consent between the contracting parties (as well as object and cause). See Ocasio-Hernandez, 640 F.3d at 12 ("Non-conclusory factual allegations in the complaint must ... be treated as true..."). To boot, BELFOR also alleges that MAPFRE later "reconfirmed its obligations under [the agreement]." Docket No. 18 at 4.

Still, while the Rule 12(b)(6) inquiry usually focuses on the allegations pleaded in the complaint, and stops short of considering record evidence, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegation." Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014) (quotations omitted). The court must then turn to the appended exhibits to determine if they contradict, and thus trump, BELFOR's plausible allegations.

*ii. E-Mails 1-3: Consent and Counteroffers*

Exhibit 2 to the amended complaint includes four e-mails.[4] See Docket No. 18, Exhibit 2. MAPFRE sent the first ("e-mail 1"), containing a settlement offer to BELFOR, on March 16, 2018. See id. at 2. The second ("e-mail 2"), sent on the same date by BELFOR in response to e-mail 1, "confirms that [BELFOR] will agree to settle the pending claims," but later modifies the terms of the settlement offer originally tendered by MAPFRE in e-mail 1. Id. at 1. In the third e-mail ("e-mail

---

[4] All e-mails referenced herein consist of communications between representatives of BELFOR and MAPFRE. For brevity's sake, the court will specify only if either BELFOR or MAPFRE sent the e-mail. It is to be understood that the opposing party was the recipient of the e-mail being discussed.

3"), sent on March 19th, BELFOR "withdraws and amends" its response in e-mail 2 and accepts the offer MAPFRE tendered in e-mail 1. See id.

Now, "consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." P.R. LAWS ANN. tit. 31, § 3401. In order for an acceptance to operate as contractual consent, it must be "pure" and "simple." See Kansas Milling Co. v. Royal Bank of Canada, 52 P.R. Dec. 101 (1937)[5]; CRM Contractors, Inc. v. Matcor, Inc., 2006 WL 1761962 at *4-5 (P.R.C.A. 2006) (quoting José Ramón Vélez Torres, CURSO DE DERECHO CIVIL, T. IV, V. II DERECHOS DE CONTRATOS, 1990, pag. 38) (also citing L. Diez-Picazo, FUNDAMENTOS DEL DERECHO CIVIL PATRIMONIAL, Madrid, Ed. Tecnos, 1979, Vol I, pag. 193; etc.) (translation supplied by MAPFRE in Docket No. 46, Attachment 1). That is, it must accept the tendered offer in its entirety without modifying it or adding new terms. See id.

On the other hand, an "acceptance" that modifies or adds to the considered offer is a counteroffer (i.e. *NOT* and acceptance that forms consent). See id. See also Restatement, Second, Contracts § 39. In terms of consent, a counteroffer operates as a rejection. See id. Pursuant to Puerto Rico law, a rejection extinguishes the original offer. See id. Thus, when a party responds to an offer with a counteroffer, the original offer ceases to exist. See id. Instead, the counteroffer takes its place, and must then be accepted by the other party for a valid contract to be perfected. See id.

MAPFRE extended a settlement offer in e-mail 1. In e-mail 2, BELFOR modified the terms of the offer, adding the requirement of "full mutual release." BELFOR did not accept MAPFRE's offer in e-mail 2. Instead, BELFOR made a counteroffer, which operatively rejected MAPFRE's original offer, thereby extinguishing it. Thus, when BELFOR attempted to accept the original offer "as is" in e-mail 3, there was no longer an offer to accept because the original offer had ceased to exist. MAPFRE is accordingly correct in asserting that these three e-mails do not evince the

---

[5] The Puerto Rico Supreme Court has not reconsidered this issue since 1937. Still, the local court of appeals followed that holding as recently as 2012. See R & J Consulting Corporation v. Schering Plough Products, LLC, 2012 WL 1697229 (P.R.C.A. 2012).

formation of valid consent to the agreement, as they lack a "pure" and "simple" acceptance of the terms originally tendered by MAPFRE.

MAPFRE would have the court end the inquiry here and dismiss BELFOR's claims. As the court will explain below, MAPFRE's position is nonetheless debatable at this stage.

### iii. E-Mails 4-5: The Whole Nine Yards

BELFOR does not purport that the appended e-mails evince, in and of themselves, the formation of consent and the perfection of a valid contract. See Docket No. 18 at 4 ("A copy of the e-mails *memorializing* the terms of [the agreement] is attached hereto…" (emphasis added)). See also Docket No. 51 at 3 ("the emails attached to the Amended Complaint *merely memorialized* the terms of the Settlement Agreement—*they do not represent the entire sequence of events* forming the basis of the instant action" (emphasis added)). More importantly, the three e-mails discussed above do not exist in a vacuum, nor are they the only e-mails before the court.

BELFOR also appended two more e-mails to the amended complaint. Both e-mails *reference conversations* between the parties that took place on March 21st and 23rd, the contents of which are not in the appended exhibits nor available for this court's review. The two e-mails also allude to a payment scheduled to be made by MAPFRE to BELFOR on March 26th. The fourth e-mail ("e-mail 4"), sent on Monday, March 26th, by BELFOR, reads as follows: "Just touching base after *our call Friday night*. I'd like to understand where [MAPFRE] stands with regard to the *wire payment scheduled to be issued to BELFOR today*." Docket No. 18, Exhibit 2 at 1 (emphasis added). The fifth e-mail ("e-mail 5"), predates e-mail 4. MAPFRE sent it on Thursday, March 22nd, and it reads, in relevant part:

> *As discussed yesterday*, we are waiting for the insured to execute the Proof of Loss and Acknowledgement. We cannot release any payments until they do so. We provided the information requested by them yesterday, so I would expect this matter to be resolved today. Due to this delay, *I am uncertain if we will be able to pay by March 26.* We should know more by this afternoon.

Docket No. 18, Exhibit 3 (emphasis added).

It is patently clear from these e-mails that (1) settlement discussions – in which consent could have been formed and a valid contract perfected [6] – were not limited to the e-mails appended to BELFOR's amended complaint, and (2) the parties had agreed to, and even scheduled, a payment to be made by MAPFRE to BELFOR on March 26th.[7]

Moreover, courts presume the validity of a contract, and the consent thereof. See Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (quoting Capo Caballero v. Ramos, 83 P.R. Dec. 650, 673 (1961)) (noting the important social interest in holding parties to their contracts, which the Puerto Rico Supreme Court has repeatedly recognized).

While the appended e-mails may be suggestive, at this stage, the court is not yet able to determine whether a valid contract existed between BELFOR and MAPFRE.[8] As a result, the court finds that the parties should proceed with discovery, and the court may subsequently revisit the issue, with the benefit of further briefing and a more developed record.[9]

Thus, MAPFRE's motion to dismiss count five of the amended complaint is DENIED.

## B. Article 1802 – Puerto Rico's General Tort Statute (Count Six)

MAPFRE also requests to dismiss BELFOR's Article 1802 claim. See Docket No. 46. See also P.R. LAWS ANN. tit. 31, § 5141. However, MAPFRE lodges no intelligible arguments against it, aside from those already discussed above. As such, MAPFRE's motion to dismiss count six of the amended complaint is DENIED.

---

[6] Even if these discussions were conducted orally, a valid contract could have still been formed. "Verbal contracts are valid and enforceable." Rojas-Buscaglia v. Taburno-Vasarhelyi, 897 F.3d 15, 27 (1st Cir. 2018) (citing P.R. LAWS ANN. tit. 31, § 3451).

[7] That the parties scheduled a payment heavily suggests that they indeed had agreed to terms.

[8] See MMB Dev. Grp., Ltd. v. Westernbank Puerto Rico, 762 F. Supp. 2d 356, 367–68 (D.P.R. 2010). (where the existence of a contract was in controversy, a "complaint's repeated reference to documents and conversations memorialized in electronic exchanges" was sufficient to defeat rule 12(b)(6) motion). It must be noted that MMB Dev. Grp. dealt with a contract under the Puerto Rico Commercial Code, P.R. LAWS ANN. tit. 10, § 1001, et seq., rather than the Civil Code.

[9] The amended complaint's factual allegations raise a reasonable expectation that discovery will reveal evidence of the agreement's existence. See Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015) (quoting Twombly, 550 U.S. at 556); Garcia-Catalan v. United States, 734 F.3d 100, 104 (1st Cir. 2013) ("the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case").

## IV. CONCLUSION

For the foregoing reasons, MAPFRE's motion to dismiss is **DENIED**, insofar as the amended complaint plausibly pleads the existence of a valid contract and the appended exhibits do not support an inference to the contrary.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, December 14, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PERÉZ-GIMÉNEZ**
**SENIOR U.S. DISTRICT JUDGE**
